STATE OF INDIANA *v.* GEORGE M. LANIGAN
AND CLARA C. LANIGAN.

[No. 671S151. Filed April 5, 1972. Rehearing denied June 5, 1972.]

*Theodore L. Sendak,* Attorney General, *John T. Carmody,* Deputy Attorney General, for appellant.

*Robert E. Robinson, Frank E. Spencer,* of Indianapolis, for appellee.

ARTERBURN, C. J.—This is an appeal from a judgment rendered in an inverse condemnation action filed by the appellee-

plaintiff against the State of Indiana. In the original complaint the appellee alleged that the State of Indiana had wrongfully constructed a no-access fence extending from the northernmost corner of his property southward for a distance of approximately 400 feet on U. S. Highway 52 thereby depriving him of direct access between a portion of his property and U. S. Highway 52. Appellee prayed for the appointment of appraisers to appraise the damages resulting from the construction of said fence.

The State filed objections to the complaint alleging, inter alia, that the landowner "for valid consideration, did on July 2, 1962, execute to the Indiana State Highway Commission of the State of Indiana, a right of way grant covering the real estate described in appellees' complaint and that the Indiana State Highway Commission in consideration thereof agreed to pay appellees a total sum in damages of Eight Thousand and Eight Hundred Dollars ($8,800.00.)" The State admitted that the appellees were the owner of the land involved and that they built the fence as described in the complaint; but they contend that they had obtained the right to build the fence and had compensated the landowner for the right as described in the right of way grant of July 2, 1962, for I-65. U. S. Highway 52 intersected I-65 at the point which appellees' land was situated.

On November 10, 1967, the landowner filed a motion for Summary Judgment, praying that an Order of Inverse Appropriation be entered and appraisers be appointed.

On April 24, 1968, the State also filed its own Motion for Summary Judgment and on that same day argument was heard on both motions. The landowners' motion was sustained and three appraisers were appointed. On September 27th the appraisers filed their report assessing total damages and interest in the amount of Thirty-Five Thousand One Hundred Dollars ($35,100.00). Among other things the court made the following finding when it sustained appellees' motion for summary judgment:

"3. That said erection of said no-access fence resulted in the taking of an interest in Plaintiff's land by the Defendant herein for a public use without having first been appropriated under any law providing for such appropriation or otherwise acquired."

A jury trial was set for October 14, 1969, and on that date the landowner filed a Motion in Limine in the following words:

"The Plaintiffs by counsel, before the commencement of evidence in the trial of the above-entitled cause, moved the Court to instruct the defendant and its counsel that no evidence pertaining to the issues regarding the determination by this Court, that the erection of the fence involved resulted in a take and no evidence prior to the erection of said fence pertaining only to the take should be offered before the jury without first offering the same in the presence of the Court and counsel for Plaintiffs only, at which time the Court can rule upon the admission of the same and that the court instruct the Defendants counsel that no comment is to be made before the jury, either before the introduction of evidence, during the introduction of evidence, or subsequent to the conclusion of the introduction of evidence, pertaining to matters previously decided by this Court regarding the taking of an interest in Plaintiff's property."

The trial was held and jury found for the defendant State. The landowner's Motion for a New Trial was sustained because, although the defendant had introduced evidence of no damages, the trial court was of the opinion "that there was an invasion of plaintiff's property rights by the construction of the fence in question and that some damages should have been awarded rather than a zero verdict." In substance the court held the non-access fence erected by U. S. 52 was not part of the grant of right of way for I-65. The State initiated an appeal at the point on the legal question involved, but later dismissed the appeal.

Prior to the second trial the landowner filed a Motion in Limine, the same as in the jury trial, requesting in general and unspecific langauge that all evidence as to the right of way grant and the enhancement of the residue by the con-

struction of I-65 be kept from the jury. This motion was sustained.

The state, at the second trial attempted to introduce evidence of construction plans to establish that the construction of the fence between landowner's property and U. S. Highway 52 was a part of the I-65 and U. S. 52 interchange project; but all such evidence was ruled inadmissible. The State's valuation witness was forced to assume in his testimony that the construction of the no-access fence along U. S. 52 was a separate taking from that for I-65.

The result of this second trial was jury verdict in favor of the plaintiff-appellee. The court entered judgment on that verdict in the following words and figures:

> "IT IS THEREFORE ORDERED, ADJUDGED AND DE-CREED by the Court that the Plaintiffs have and recover from the defendant the sum of Seventeen Thousand Five Hundred Dollars ($17,500.00), with interest computed in the amount of $3,620.60. The Court further ordered and adjudged that plaintiffs shall repay to State of Indiana the balance of the Court award towit: $13,979.40. Plaintiffs' Surety released."

Following the verdict the state filed a Motion to Correct Errors which was denied. From the denial of that Motion appellant takes this appeal.

The first issue brought to the attention of this court, as stated in appellant's Summary of Argument portion of his brief, asks the question; did the landowner, who is the appellee herein, convey to the State the right to limit access between the northernmost portion of his property and U. S. 52?

We feel that he did not. In the right of way deed or grant executed between the appellant and the appellee there is no mention of Highway 52 or the mention of restricting appellee's access to Highway 52. The right of way grant simply states that the State is acquiring this land for the construction of a "limited access" highway, I-65. Therefore, the tak-

ing of appellee's access to Highway 52 is in our opinion a separate taking from that as contemplated from the right of way grant for a limited access highway, namely I-65. The State has admitted to building the fence cutting off appellee's access to Highway 52.

We come now to the major issue of the case; was the trial court correct in sustaining the landowner's Motion in Limine and in enforcing that Motion by keeping from the jury all evidence that would show benefits the landowners received which would enhance the value of the landowner's property as a result of the construction of I-65. The Motion in Limine, which was stated in full earlier in this opinion, asked in substance that no evidence pertaining to matters previously decided by this court regarding the taking of appellee's property for I-65 should be offered before the jury. In view of our finding that the taking of appellee's access to Highway 52 was a separate taking from that granted in the right of way agreement for I-65, we must concur in the trial court's act of sustaining of the Motion in Limine.

In this case the fact that his property may have been enhanced by another taking is irrelevant to this particular taking, since all benefits and damages were resolved and settled by that taking. We further note that the State easily could have avoided this whole problem by simply expanding its wording in its right of way grant for I-65. Since they chose to so limit their wording in terms of what rights were acquired, they are held to the four corners of the grant and additional takings must be found independent of that original agreement.

The appellant finally argues that the construction of the no-access fence was a part of the interchange project and such is a question of fact to be determined by the jury and supported by evidence. The only argument that the State can use to support such a contention is that which they might get through the deed or original grant for the right of way for

I-65. Looking at that instrument, it makes no reference to any interchange or intersecting roads or highways. The "limited access" mentioned in that instrument could not be extended to any other roads or highways except such as are named therein, namely only right of way for I-65. There is no uncertainty as to either the fact or the law on the point raised, and, therefore, no issue which should have been submitted to the jury. This contention appears to be merely an attempt to extend a right of way non-access grant for I-65 to another intersecting highway or road. There is no deed or instrument in the evidence to support such a contention. Had the State desired to raise the legal question involved here, it would have done so by maintaining its appeal when the lower court, on the very issue raised here, granted a new trial on the ground that building the fence along U. S. 52 was a separate taking from that for I-65. The State, however, abandoned its appeal and went to trial with the law of the case established by the granting of the new trial from which it could have appealed. See 7 I.L.E. *Courts* § 70 (1958) and 2 I.L.E. *Appeals* § 478, (1957).

The judgment of the trial court is affirmed.

DeBruler, Givan, Hunter, Prentice, JJ., concur.

NOTE.—Reported in 280 N. E. 2d 809.